299 P.2d 646

C. A. UPTON, Appellant,

v.

EAST–WEST REALTY CO., Inc., Appellee.

No. 6110.

Supreme Court of Arizona.

July 10, 1956.

Shimmel, Hill & Cavanagh, by John E. Savoy, Phoenix, for appellant.

Kenneth C. Chatwin and Jacob S. Alpert, Phoenix, for appellee.

UDALL, Justice.

East-West Realty Co., Inc., plaintiff (appellee), brought suit against defendant (appellant) C. A. Upton for a brokerage fee in connection with the sale of a certain business known as "Upton's Candy", operated on North Seventh Avenue in the city of Phoenix. After a trial to the court, sitting without a jury, judgment was rendered in favor of plaintiff and against defendant in the sum of $1,200, and upon denial of a motion for new trial this appeal was taken. We shall herein refer to the parties as they were designated in the lower court, i. e. plaintiff and defendant.

The facts stated, as they must be, in a light most favorable to a sustaining of the judgment, are as follows: One Arthur Spiros, a salesman for plaintiff, contacted defendant by telephone some time in early August, 1952, to inquire if defendant would be interested in selling one of his luncheonette or ice cream parlors. He informed defendant that he had a good prospect, whereupon he was invited to defendant's office and a discussion of terms and conditions of sale transpired. The following testimony was given by Spiros:

"Q. Did you advise Mr. Upton that you had a prospective purchaser for the business? A. I did.

"Q. Did he authorize you to show the property? A. Yes, sir."

Spiros testified the only restriction upon the agreement was that defendant did not wish the offer advertised in the newspapers or directly brought to the attention of the shop personnel. On cross-examination he admitted defendant refused to sign a listing contract, but denied their agreement was limited to a sale to the one prospect then interested. Defendant admitted the existence of a restricted oral agreement to pay a commission, but repeatedly testified this was limited to a sale to "this one man", i. e., the prospect then interested. Thereafter Spiros showed the property to several other persons, including one C. F. Barney. The latter testified he contacted defendant directly, and some few weeks later bought the business in a direct transaction. Defendant testified the sale price was $12,000 —some $500 less than the figure quoted to Spiros, " * * * and I would throw in the inventory because there was no com-

*mission to pay on it,* that I didn't have it listed with anybody." (Emphasis supplied.) Barney testified he had told defendant, prior to the consummation of the sale, that plaintiff's salesman had informed him this property was for sale and showed it to him. Defendant did not deny his knowledge thereof but stood on the fact that Spiros had no written listing and the oral agreement was limited to the single prospect.

The sole question presented is whether there is sufficient evidence to sustain the trial court's implied finding of a valid oral brokerage contract between the parties so as to entitle plaintiff to a commission on this sale. No question is raised as to the amount of the fee allowed by the judgment, nor whether plaintiff was the "procuring cause" of the sale made to Barney.

 No findings of fact having been requested or made, we must presume the trial court found the necessary facts upon which to predicate its judgment, providing there is evidence in the record to support same. Funk v. Spalding, 74 Ariz. 219, 223, 246 P.2d 184. Defendant maintains that the evidence is insufficient to support any such finding, and relies wholly upon the so-called "negative evidence" rule. He argues that while his own testimony as to the limited authority to sell was positive and unequivocal, the only testimony negating same was without sufficient predication, hence cannot prevail as against direct com-

petent positive testimony, citing *Jeune v. Del E. Webb Const. Co.,* 76 Ariz. 418, 265 P.2d 1076. The purported negative testimony of the salesman Spiros is set forth as follows:

"Q. Did he tell you at that time not to show it to anyone else at all? A. I don't recall that.

\* \* \* \* \* \*

"Q. Was the conversation limited to any one particular individual at that time? A. Not that I recall."

From a study of the transcript in this case we do not agree with defendant that this purported negative evidence is the extent of plaintiff's evidence concerning the asserted limitation on the oral brokerage contract. In addition to the foregoing Spiros testified as follows:

"Q. Didn't he at that time tell you if you sold this to this one prospect, that you could show it to the one prospect and if you sold it to him he would pay you a commission, but wouldn't give you a listing to sell it to anybody else? A. No, sir."

The defendant also testified he told plaintiff's agent he would not give him a listing, but would pay him the regular commission if he sold to the one man. On the contrary Spiros testified: "He did not tell me he would not give me a listing." The defendant also testified in effect that he

did not give the written listing because he was limiting plaintiff's authority to sell to the one particular prospect. Spiros has a different version of why the former listing was not signed, wherein he testified as follows:

"A. The purpose, the way I understood, not to sign my listing was that the place wouldn't be kicked around by other salesmen like a lot of places are, a listing is taken, a girl types it up and gives it to a lot of salesmen and they take a lot of prospects who don't have the money up there to look at it."

We conclude that, assuming all of plaintiff's evidence to be true, the trial court could legally find that when the defendant authorized plaintiff to find a purchaser for his property it was not limited to an authorization to sell the same to one particular prospect.

All intendments and inferences being taken in favor of plaintiff, we find sufficient evidence in the record to create a conflict, therefore the judgment must prevail.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.