NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

FIRST UNITED FUNDING, L.L.C., *Plaintiff/Appellee,*

*v.*

LA JOLLA HOLDINGS LIMITED PARTNERSHIP, a Nevada limited partnership; JEFF A. SHUMWAY, an individual, FOUR CORNERS DEVELOPMENT, LLC, a Nevada limited liability company, *Defendants/Appellants.*

No. 1 CA-CV 14-0659
FILED 4-19-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2010-029732
The Honorable J. Richard Gama, Judge

**AFFIRMED**

---

COUNSEL

Quarles & Brady, LLP, Phoenix
By Michael S. Catlett, Julia J. Koestner
*Counsel for Plaintiff/Appellee*

Shumway Law Offices, Scottsdale
By Jeff A. Shumway
*Counsel for Defendants/Appellants*

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Maurice Portley and Judge Patricia K. Norris joined.

**T H O M P S O N**, Judge:

¶1 Appellant defendants La Jolla Holding, LP and Jeff A. Shumway[1] (collectively, here, La Jolla) appeal from the trial court's grant of a deficiency judgment following First United Funding, LLC's (FUF's) motion for partial summary judgment. La Jolla further challenges the trial court's dismissal of its counterclaims and the amount of the final judgment. Finding no error, we affirm.

PROCEDURAL AND FACTUAL BACKGROUND

¶2 The facts are largely undisputed. In 2008 FUF, a commercial lender now in receivership, received from La Jolla an executed promissory note in the principal amount of $1,200,000. Repayment was secured by a deed of trust on Arizona real property. On the same day, Shumway executed a guaranty pursuant to which Shumway unconditionally guaranteed repayment of all amounts due under the La Jolla note. The money was transferred and La Jolla defaulted.

¶3 In January 2010, FUF formally noticed both La Jolla and Shumway of the default and demanded it be cured. Neither party cured the default. FUF accelerated the note demanding the unpaid principal balance and accrued interest immediately. As of August 11, 2010, the total amount due and owing through the date of the trustee's sale was $1,385,476.47. The property was sold at trustee's sale on that date for a winning credit bid of $795,000. The balance due and owing after application of the proceeds of the sale was $590,476.47. Additional costs that accrued included additional property tax, costs of collection, and interest at the rate of five percent until the entry of final judgment.

---

[1] Shumway was also a guarantor to the Four Corners loans, which are not part of this appeal.

¶4 FUF filed a verified complaint and then an amended verified complaint alleging breach of contract as to La Jolla and breach of guaranty against Shumway.[2] FUF's prayer for damages indicated no payments had been made on the loan principal of $1,200,000. In their original answer La Jolla admitted executing the contract and admitted Shumway executed the guaranty. It asserted affirmative defenses including, among others, the loan identified in the complaint was void due to fraud, unclean hands, violations of the truth in lending and consumer fraud laws. In its amended answer La Jolla again admitted executing the contract, but Shumway asserted he had "no independent recollection of executing" the guaranty. La Jolla brought counterclaims against FUF for licensing violations for acting as a commercial mortgage banker without an Arizona license, under Arizona Revised Statutes (A.R.S.) § 6-943, "Licensing of mortgage bankers required; qualifications; application; bond; fees; renewal," and for unlawful activity under A.R.S. § 13-2314.04 (2010) "Racketeering; unlawful activity; civil remedies by private cause of action; definitions" (RICO). In its pleadings La Jolla did not assert any payments on the loan.[3]

¶5 Meanwhile, FUF was put into receivership in October 2009 because its debts exceeded its assets. The receiver was charged with continuing to operate FUF's business, including pursuing enforcement of payment obligations owed to FUF from promissory notes and mortgages. In September 2010, Corey N. Johnston, the president and principal of FUF, pled guilty in federal court to bank fraud and tax evasion. Johnston admitted overselling participation in commercial loans to various participant FDIC-insured banks and underreporting his taxable income. Johnston admitted that over the course of years he continued to oversell participation in order to keep paying on earlier loans. At the plea hearing the government alleged that the fraud may have cost over 79 million dollars.

¶6 FUF filed a motion for partial summary judgment on the counts against La Jolla. Copies of the loan and guarantee documents were attached to FUF's separate statement of facts. FUF's receiver submitted a

---

[2] There are other defendants below which are not part of the current judgment or appeals.

[3] Notably, one of the issues on appeal is whether La Jolla was correctly credited with a $35,000 principal payment. La Jolla contends that payment should be credited to another party.

declaration outlining La Jolla's default, supporting the damages calculation, and detailing the facts surrounding the trustee's sale.

¶7          La Jolla submitted a responsive brief asserting that FUF fraudulently induced it to enter into the contract by making material misrepresentations and it requested additional discovery pursuant to Ariz. R. Civil. P., Rule 56(f). The request for additional discovery was granted. Approximately three months later, La Jolla filed a supplemental response asserting FUF violated the duty of good faith and fair dealing by failing to disclose that FUF was "an insolvent Ponzi scheme" or induced it to make a mistake of fact as to the risks of doing business with FUF . Thus, it asserted, the loan and guarantee were void or voidable.   It also filed a sur-response addressing the need for a fair market value determination.[4]

¶8          After consideration of the responsive briefs and controverting facts, the trial court granted FUF's motion for summary judgment on the counts against La Jolla. The trial court found dispositive that it was undisputed that La Jolla received the loans sums, FUF complied with loan documents, and that La Jolla defaulted.  The trial court found FUF did not have a duty to disclose its financial status to La Jolla.  The court also found the loan and guarantee documents expressly waived any claim of fraud or damages based on representations made outside of the agreement.  The trial court concluded:

> the Court concurs with Plaintiff that the Ponzi-scheme orchestrated by Plaintiff's prior CEO did not result in these individual Defendants' default, nor did this scheme increase the risk of default.  These Defendants were not the victims of this scheme; those individual investors who purchased oversold participation in these loans were the victims.

¶9          FUF next filed a motion to dismiss the counterclaims against it.  The trial court granted that motion.  In the final judgment, under Rule 54(b), the court awarded FUF $539,296.82, prejudgment interest, and attorneys' fees in the amount of $60,455.  La Jolla filed a motion to amend the final judgment by $35,000 or, in the alternative, a motion for a new trial, which the trial court denied.  La Jolla appeals from both of these rulings.

---

[4] The fair market value of the property was later determined by stipulation.

ISSUES

¶10        La Jolla raises four issues on appeal:

a.   Whether the trial court erred in considering loan and guaranty documents that were either not authentic or "are, or may be, forgeries" in granting summary judgment to FUF;

b.   Whether the trial court erred when it found La Jolla had waived a fraud in the inducement claims in the loan and guaranty documents;

c.   Whether the trial court erred in granting La Jolla a $35,000 credit in the final judgment for a principal payment; and

d.   Whether the trial court erred in dismissing La Jolla's counterclaims.

DISCUSSION

¶11        FUF, through its receiver, asserts it loaned money to La Jolla that was never paid back, Shumway failed to perform under his duty as guarantor, and FUF suffered damages due to La Jolla's default. FUF asserts that defendants were not victims of Johnston's scheme and that La Jolla received every penny that they were promised. The trial court agreed, finding no genuine issue of material fact and that FUF was entitled to judgment as a matter of law.

¶12        We review the grant of summary judgment de novo. *Lewis v. Debord*, 236 Ariz. 57, 59, ¶ 5, 335 P.3d 1136, 1138 (App. 2014). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56; *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 385, ¶ 15, 132 P.3d 825, 829 (2006). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997). Summary judgment may be granted where the facts produced in response to summary judgment have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶13        On appeal, La Jolla first asserts the trial court erred in relying on unauthenticated documents when granting summary judgment on FUF's claims of breach of contract and breach of guaranty. In response, FUF

maintains La Jolla did not contest the authenticity of the documents until after the ruling on the motion for summary judgment and, therefore, waived this issue.[5,6]   We agree that this issue is waived because it was not timely raised below.  This case was heavily litigated, yet nowhere in the prior two and a half years, and through summary judgment, did La Jolla challenge the documents as forged or the authentication by the receiver as insufficient.[7]   Failure to object or move to strike the proffered underlying documents on a motion for summary judgment, constitutes a waiver of that claim.  *See Airfreight Express, Ltd., v. Evergreen Air Ctr*, 215 Ariz. 103, 112, ¶ 26, 158 P.3d 232, 241 (App. 2007) (late allegations that the declaration supporting summary judgment was "suspect" were waived on appeal).[8]

¶14         La Jolla next claims the trial court erred when it found La Jolla had waived its fraud in the inducement claims.  We will reverse the trial court's determination that a claim was waived only if it is clearly erroneous.  *Meineke v. Twin City Fire Ins. Co.*, 181 Ariz. 576, 580, 892 P.2d 1365, 1369 (App. 1994), *citing Goglia v. Bodnar*, 156 Ariz. 12, 19, 749 P.2d 921, 928 (App. 1987).  The trial court's decision will be affirmed if it is correct for any reason. *Cross v. Cross*, 94 Ariz. 28, 31, 381 P.2d 573, 575 (1963).

¶15         The trial court ruled that the documents integration clauses waived any claim for damages or rescission based on representations not

---

[5] FUF further notes that the documents submitted in support of the motion for summary judgment were authenticated as true and accurate copies by a representative of FUF's receiver.

[6] Specifically, after the ruling on the motion for partial summary judgment FUF sought leave to amend its complaint to add another defendant and to add a claim of unjust enrichment against another party.  Neither change effected La Jolla.  La Jolla first made his unsubstantiated challenge to the veracity of the documents in his amended answer.

[7] On appeal La Jolla asserts that the documents should have been authenticated by Johnston.  The receiver, it asserts, could not authenticate the documents because he was not present when they were signed.

[8]  We note, although we need not discuss, that the Uniform Commercial Code on Negotiable Instruments, A.R.S. § 47-3308 (2005) requires any challenge to the authenticity of an instrument must be made in the pleadings or is deemed admitted.

contained in the applicable agreements. The court also found La Jolla was not defrauded, suffered no actual damages[9], and never offered to restore FUF to its prior position. A person who asserts they have been defrauded may litigate to rescind the contract or to affirm the contract and sue for damages. *Jennings v. Lee*, 105 Ariz. 167, 171, 461 P.2d 161, 165 (1969); *Mahurin v. Schmeck*, 95 Ariz. 333, 342, 390 P.2d 576 (1964). A party seeking to rescind a contract must restore or offer to restore to the other party anything received under the contract. *Jennings*, 105 Ariz. at 171, 461 P.2d at 165. Because such has not happened here, and there are no damages, we cannot find error in the trial court's ruling.

¶16 La Jolla next argues the trial court erred in failing to revise the final judgment to credit another party with a payment of $35,000. We review the denial of a motion to amend judgment under an abuse of discretion standard. *See Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 2, 115 P.3d 139, 141 (App. 2005). Given the receiver submitted a declaration to the court stating the $35,000 was from La Jolla and Shumway admitted in his deposition that the money came from La Jolla, we cannot find the trial court abused its discretion in denying the motion to amend.

¶17 Finally, La Jolla cursorily asserts the trial court erred in dismissing its counterclaims of violation of licensing regulations and RICO

---

[9] Additionally, we note that that any assertion of fraud must be pled with specificity. Ariz. R. Civ. P. 9(b). To establish fraud, a plaintiff must show that the defendant made a false material representation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representations falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage. *See Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). However, bare allegations that a thing is "fraudulent" is insufficient to comply with the rule. *In re Cassidy's Estate*, 77 Ariz. 288, 291, 270 P.2d 1079, 1082 (1954). At the least, La Jolla has failed to show actual damages. It has been a long standing principal that a showing of actual damages is essential to making out a case of fraud and failure to prove this element is fatal to any claim of fraud. *See Cullison v. Pride O'Texas Citrus Assoc.*, 88 Ariz. 257, 259, 355 P.2d 898, 889 (1960). Given this result we need not explore whether any of the alleged representations were material or whether La Jolla satisfied any other element in pleading fraud.

as against FUF. [10] We will uphold a dismissal when it is certain that an appellant could not prove any set of facts entitling him or her to relief. *Wallace v. Casa Grande Union High Sch. Dist. No. 82*, 184 Ariz. 419, 424, 909 P.2d 486, 491 (App. 1995).

¶18 In ruling on the motion to dismiss, the trial court stated on the licensing claim:

> the Court notes that no authority has been provided that a party can assert a private cause of action under Arizona's licensing statutes. That issue aside, this Court concurs with Plaintiff that the claim, if viable, is time barred. A.R.S. § 12-541(5) requires this claim to be filed within one year of the date it accrued. It is undisputed it was not timely filed.

¶19 Here, likewise, La Jolla has not provided any authority allowing a private right of action on the licensing of mortgage bankers. The plain language of the statute does not indicate such a right and we know of none. *See, e.g., Napier v. Bertram*, 191 Ariz. 238, 240, 954 P.2d 1389, 1391 (1998) (addressing whether passenger had private right of action on taxi's failure to comply with insurance coverage requirements). There being no legal basis for this claim, the trial court is affirmed.

¶20 On the issue of the civil RICO[11] claim the trial court stated:

---

[10] The appeal in this regard is also noncompliant with ARCAP 13(a)(7).

[11] Racketeering is defined in A.R.S. § 13–2301(D)(4) (Supp. 2015) as:

> [A]ny act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred and, if the act occurred in a state or country other than this state, that would be chargeable or indictable under the laws of this state if the act had occurred in this state, and that would be punishable by imprisonment for more than one year under the laws of this state and, if the act occurred in a state or country other than this state, under the laws of the state or country in which the act occurred, regardless of whether the act is charged or indicted . . . .

Defendants Shumway claim that Plaintiff engaged in a scheme to defraud by failing to reveal Corey Johnston's Ponzi scheme against Plaintiff's participant banks. However, this Court has previously ruled that Plaintiff did not defraud these Defendants as they received all they bargained for in the context of the parties' transaction. Further, the applicable statute places upon claimant a requirement that it plead at least two criminal acts of racketeering. In compliance with the statute, these Defendants allege that Plaintiff failed to disclose the existence of a Ponzi scheme and failed to provide information about its finances or source of funds. However, these positions were previously presented and rejected by this Court. . . . Finally, this Court concurs with Plaintiff that Defendants have also failed to satisfy RICO's continuity requirement and further, failed to plead RICO's causation requirements.

**¶21** We agree with the trial court that La Jolla received the benefit of its bargain. In order to sustain a RICO claim, La Jolla must have suffered damages. *See Hannosh v. Segal*, 235 Ariz. 108, 114, ¶¶ 17-19, 328 P.3d 1049, 1055 (App. 2014) (holding internet gambler had no injury under RICO, where there was no allegation of cheating, because "Hannosh got what he

---

Section 13-2314.04. Racketeering; unlawful activity; civil remedies by private cause of action; definitions

A. A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of § 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation. If the person against whom a racketeering claim has been asserted, including a lien, prevails on that claim, the person may be awarded costs and reasonable attorney fees incurred in defense of that claim. No person may rely on any conduct that would have been actionable as fraud in the purchase or sale of securities to establish an action under this section except an action against a person who is convicted of a crime in connection with the fraud, in which case the period to initiate a civil action starts to run on the date on which the conviction becomes final.

bargained for: an opportunity to win"). That conclusion being sufficient, the trial court is affirmed.

## CONCLUSION

**¶22** For the above stated reasons, the trial court is affirmed. FUF is awarded its attorneys' fees pursuant to A.R.S. § 12-341.01 (2008) and its costs pursuant to A.R.S § 12-341 (2008) after compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED: ama